01

02

03

04

05

06

07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09 JEAN M. SINDT,

10          Plaintiff,

11          v.

12 CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

13
          Defendant.

14 _____

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. C13-0426-RSM-MAT

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY
APPEAL

15          Plaintiff Jean M. Sindt proceeds through counsel in her appeal of a final decision of the

16 Commissioner of the Social Security Administration (Commissioner).  The Commissioner

17 denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

18 Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having

19 considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

20 the Court recommends that this matter be REVERSED and REMANDED for further

21 proceedings.

22 / / /

REPORT AND RECOMMENDATION
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02     Plaintiff was born on XXXX, 1969.[1]  She graduated from high school and previously

03 worked as a waitress, sales clerk, and nurse assistant.   (AR 28.)

04     Plaintiff filed an application for DIB on December 14, 2010 and for SSI on November

05 25, 2011, alleging disability beginning May 9, 2009.  Her applications were denied at the

06 initial level and on reconsideration.

07     On January 13, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from

08 plaintiff.  (AR 37-51.)  On February 9, 2012, the ALJ issued a decision finding plaintiff not

09 disabled.  (AR 9-32.)

10     Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review

11 on January 12, 2013 (AR 1-3), making the ALJ's decision the final decision of the

12 Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

13 **JURISDICTION**

14     The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15 **DISCUSSION**

16     The Commissioner follows a five-step sequential evaluation process for determining

17 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

18 must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

19 not engaged in substantial gainful activity since the alleged onset date.   At step two, it must be

20 determined whether a claimant suffers from a severe impairment.  The ALJ found severe

21 _____

22     1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01  plaintiff's disorder of the back—discogenic and degenerative, affective disorder, anxiety

02  disorder, and substance abuse disorder.   Step three asks whether a claimant's impairments

03  meet or equal a listed impairment.   The ALJ found plaintiff's impairments did not meet or

04  equal the criteria of a listed impairment.

05       If a claimant's impairments do not meet or equal a listing, the Commissioner must

06  assess residual functional capacity (RFC) and determine at step four whether the claimant

07  demonstrated an inability to perform past relevant work.   From a physical standpoint, the ALJ

08  found plaintiff able to perform "essentially the full range of light work as defined in 20 C.F.R.

09  §§ 404.1567(b) and 416.967(b)" (AR 15).   Plaintiff is able to lift and/or carry twenty pounds

10  occasionally and ten pounds frequently.   She can stand and/or walk about six hours in an

11  eight-hour day, and sit for about six hours in an eight-hour day, with normal breaks.   Plaintiff

12  can balance, kneel, and climb ramps and stairs frequently. She can stoop, crouch, crawl, and

13  climb ladders, ropes or scaffolds occasionally.   Plaintiff is limited to occasional overhead

14  reaching with both upper extremities and must avoid concentrated exposure to extreme cold,

15  vibration, and hazards.

16       From a mental health/emotional standpoint, plaintiff is able to understand, remember,

17  and carry out simple instructions.   She is able to make simple work-related decisions and

18  persist adequately through a normal workweek.   Plaintiff is able to ask simple work-related

19  questions and request assistance, but should perform work which is not collaborative in nature

20  and does not involve close frequent interaction with the public, but may involve occasional

21  superficial interaction with the public.   The ALJ concluded that, with these mental limitations,

22  plaintiff retains the capacity to perform unskilled work.   (AR 30.)

01          With this assessment, the ALJ found plaintiff unable to perform her past relevant work.

02  Therefore, the ALJ proceeded to step five of the sequential evaluation, where the burden shifts

03  to the Commissioner to demonstrate the claimant retains the capacity to make an adjustment to

04  work that exists in significant levels in the national economy.   Using the Medical-Vocational

05  Guidelines as a framework in conjunctional with the plaintiff's RFC, age, education, and work

06  experience, the ALJ found plaintiff to retain the capacity to perform light as well as sedentary

07  unskilled work and, therefore, not disabled.

08          This Court's review of the ALJ's decision is limited to whether the decision is in

09  accordance with the law and the findings supported by substantial evidence in the record as a

10  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

11  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

13  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

14  supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

15  F.3d 947, 954 (9th Cir. 2002).

16          Plaintiff argues the ALJ erred by failing to identify borderline personality disorder as a

17  step two severe impairment, failed to give sufficient reasons for finding her subjective

18  testimony not credible, erred in assessing her RFC, and erroneously relied on the

19  Medical-Vocational Guidelines at step five.   She asks that the ALJ's decision be reversed and

20  her claim remanded for additional proceedings, with the opportunity to present relevant new

21  evidence.   The Commissioner argues the ALJ's decision is supported by substantial evidence

22  and should be affirmed.

REPORT AND RECOMMENDATION
PAGE -4

01                              <u>Step Two</u>

02          At step two, a claimant must make a threshold showing that her medically determinable

03   impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

04   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

05   activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

06   404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

07   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

08   effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

09   1996 (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis screening device to

10   dispose of groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also

11   required to consider the "combined effect" of an individual's impairments in considering

12   severity.  *Id.*

13          A step two severe mental or physical impairment must result from anatomical,

14   physiological, or psychological abnormalities which can be shown by medically acceptable

15   clinical and laboratory diagnostic techniques, and established by medical evidence consisting

16   of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.

17   20 C.F.R. §§ 404.1508, 416.908.  "Symptoms" are the claimant's own description of his or her

18   physical or mental impairment.  *Id.* at 404.1528(a), 414.928(a).  "Signs" are "anatomical,

19   physiological, or psychological abnormalities which can be observed, apart from the claimant's

20   statements (symptoms)."  *Id.* at 404.1528(b), 414.928(b).  "Signs must be shown by

21   medically acceptable clinical diagnostic techniques."  *Id.*  "Psychiatric signs are medically

22   demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities

01 of behavior, mood, thought, memory, orientation, development, or perception[,]" and "must

02 also be shown by observable facts that can be medically described and evaluated.   *Id.*

03 "Laboratory findings" are "anatomical, physiological, or psychological phenomena which can

04 be shown by the use of medically acceptable laboratory diagnostic techniques."   *Id.* at

05 404.1528(c), 414.928(c).   Some of these diagnostic techniques include chemical tests, studies

06 such as electrocardiograms or x-rays, and psychological tests.   *Id.*

07        Plaintiff contends the ALJ erred by failing to find personality disorder to be a severe

08 impairment.   While the ALJ did consider this disorder at step two, acknowledging two

09 examiners diagnosed the condition, he concluded "[t]hese references to personality disorder are

10 contained in evaluations that do not include diagnostic criteria to establish a personality

11 disorder", citing "Diagnostic and Statistical Manual of Mental Disorders, p. 630 (4th ed.)

12 (DSM-IV).   Plaintiff contends the ALJ mistakenly references the diagnostic criteria for

13 parasomnias (abnormal behavioral events occurring in association with sleep), rather than

14 personality disorders.   However, the edition of the DSM cited by the ALJ does set forth the

15 diagnostic criteria for personality disorders at page 630.   *See* DSM-IV at 630.

16        The Court does, however, find the ALJ's reasoning to lack clarity.   If the ALJ found the

17 reports from Dr. Carstens and Dr. Cunningham insufficiently specific with regard to

18 explanation of their diagnosis of personality disorder, the ALJ's affirmative duty to fully and

19 fairly develop the record should have triggered additional inquiry from those medical sources.

20 20 C.F.R. §§ 404.1512(e), 416.912(e).   *See also Widmark v. Barnett*, 454 F.3d 1063, 1068 (9th

21 Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability proceedings. Rather, the

22 ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's

REPORT AND RECOMMENDATION
PAGE -6

01    interests are considered.'") (quoted sources omitted).

02         On the other hand, if the ALJ meant to indicate his review of Dr. Carstens' and Dr.

03    Cunningham's findings showed the diagnostic criteria for personality disorder were absent

04    from the record, the ALJ should explain that analysis in the decision.   *Lewin v. Schweiker,* 654

05    F.2d 631, 634, n.7 (9th Cir. 1981) ("Secretary has obligation both to claimants and to reviewing

06    courts to make full and detailed findings in support of his ultimate conclusion") (citing *Small v.*

07    *Califano*, 565 F.2d 797, 801 (1st Cir. 1977).)   Analyzing the diagnostic criteria for Borderline

08    Personality Disorder, plaintiff presents a plausible argument that the record contains sufficient

09    evidence of the diagnostic criteria personality disorder to pass the step two de minimis

10    threshold.   (Dkt. 12 at 4, n. 2.)   Plaintiff argues the ALJ's step two error was not harmless,

11    because it precluded a legally sufficient evaluation of her impairments in combination.

12    Further, plaintiff argues proper consideration of her personality disorder would have shed light

13    on certain behaviors and characteristics the ALJ considered in conducting the credibility

14    analysis.

15         The Commissioner responds primarily with a lengthy recitation of the medical

16    evidence, without providing any pertinent argument.   (Dkt. 18 at 3-16.)   None of the points

17    were cited by the ALJ in making the step two determination with regard to plaintiff's

18    personality disorder.   The Court reviews the ALJ's decision "based on the reasoning and

19    factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

20    adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir.

21    2009) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of

22    reason-giving exists, in part, to let claimants understand the disposition of their cases…")).

REPORT AND RECOMMENDATION
PAGE -7

01      The Court finds it necessary to remand this matter for further consideration of plaintiff's

02 personality disorder at step two.   If necessary, the ALJ should re-contact Dr. Carstens and Dr.

03 Cunningham to clarify the basis for their diagnosis.   If the ALJ finds plaintiff's personality

04 disorder severe at step two, the ALJ should proceed through the remaining steps of the

05 sequential evaluation process, including a reassessment of plaintiff's credibility as described

06 below.

07      The Court declines to address plaintiff's argument that the ALJ's criticism of Dr.

08 Carsten's opinions as reliant solely on plaintiff's self-report questionnaire.   Remand of this

09 matter will allow further development and clarification of the basis for Dr. Carsten's opinions.

10                                    Credibility Analysis

11      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

12 reject a claimant's testimony.   *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007).

13 "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

14 inconsistencies either in his testimony or between his testimony and his conduct, his daily

15 activities, his work record, and testimony from physicians and third parties concerning the

16 nature, severity, and effect of the symptoms of which he complains."   *Light v. Comm'r of*

17 *Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

18      Here, the ALJ found plaintiff to be not "notably credible":

19      She has significant motivational issues, has not sought or accepted significant
        treatment for her mental impairments, and what she has had may be tied to her
20      drug seeking behavior; she has had documented drug seeking behavior, for
        physical impairment which has only required conservative treatment; she has a
21      poor work record, and on occasion demonstrated a bad attitude not necessarily
        rising to the level of pathology.

22

01  (AR 18.)   Plaintiff argues these reasons are not clear and convincing.

02  A.      Failure to Seek Treatment.

03          An ALJ appropriately considers an unexplained or inadequately explained failure to

04  seek treatment or follow a prescribed course of treatment.  *Tommasetti v. Astrue*, 533 F.3d

05  1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as

06  disabling as alleged "in light of the fact that he did not seek an aggressive treatment program

07  and did not seek an alternative or more-tailored treatment program after he stopped taking an

08  effective medication due to mild side effects.")   However, it may be problematic to draw an

09  adverse inference from a failure to seek mental health treatment.  *See*, *e.g.*, *Regennitter v.*

10  *Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly

11  criticized the use of a lack of treatment to reject mental complaints both because mental illness

12  is notoriously underreported and because 'it is a questionable practice to chastise one with a

13  mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting

14  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).   Here, the record shows, and the

15  Commissioner concedes, plaintiff had problems with her medical coverage for mental health

16  treatment.  (AR 216, 497.)  *See* Social Security Ruling 82-59 (failure to follow prescribed

17  treatment may be justifiable where claimant unable to afford); SSR 96-7p (ALJ should not draw

18  inferences from failure to seek or pursue treatment without first considering explanations for

19  that failure, including an inability to afford treatment).   The Court, therefore, finds plaintiff's

20  failure to pursue mental health treatment not a clear and convincing reason to find her not

21  credible.

22  / / /

REPORT AND RECOMMENDATION
PAGE -9

01   B.      Drug-Seeking Behavior

02           It may be appropriate for an ALJ to consider evidence of drug-seeking behavior as

03   evidence a claimant may be exaggerating his or her complaints of pain in order in order to

04   obtain narcotic pain medication.   *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.

05   2001), *amended opinion* at 2001 U.S. App. LEXIS 17960 (Aug. 9, 2001) (ALJ properly

06   considered evidence of exaggeration of pain to receive pain medication in credibility

07   assessment).    In this case, plaintiff concedes the evidence suggests she engaged in

08   drug-seeking behavior, but contends the behavior was prompted by real pain.    The

09   Commissioner does not provide a substantive response.   (Dkt. 18 at 18.)

10           The Court finds the ALJ appropriately considered evidence of drug-seeking behavior in

11   the medical records to find plaintiff's pain complaints less than credible. (*See, e.g.,* AR 317

12   (citing narcotic-seeking behavior); AR 309, 327 (plaintiff found to have violated her pain

13   contract); AR 563 (plaintiff "very upset about the fact she [was] not getting opiates").)   Less

14   persuasive, however, is the ALJ's finding that, to the extent plaintiff has sought or accepted

15   mental health treatment, it "may be tied to her drug seeking behavior[.]"   (AR 18.)   There is

16   no indication in the record plaintiff was given access to narcotics as a component of her mental

17   health treatment.   To the extent the ALJ's credibility analysis rests on this reason, the Court

18   finds it neither clear nor convincing.

19   C.      Objective Evidence of Panic Attacks and Mental Status Examination Findings

20           The ALJ found plaintiff's allegations of significantly limiting mental health symptoms

21   inconsistent with the objective medical evidence.   Plaintiff argues two of the examples cited by

22   the ALJ in this regard do not stand up to scrutiny.   First, plaintiff disputes the ALJ's finding

REPORT AND RECOMMENDATION
PAGE -10

01  that, "[w]hile the claimant alleges frequent and recurring panic attacks, her objective medical

02  records are inconsistent with this allegation", pointing to records at the Community Health

03  Center that show no report of a panic attack for a nine month period.  (AR 18-19, 564.)

04  Plaintiff cites multiple references in the Community Health Center records noting anxiety

05  complaints, post-traumatic symptoms, and assessing a generalized anxiety disorder, suggesting

06  plaintiff's use of the term "panic attack" is more consistent with generalized anxiety.

07         Plaintiff also argues substantial evidence does not support the ALJ's characterization of

08  her mental status exam findings as "normal" (AR 18), citing findings to the contrary, such as

09  suicidal ideation, constructed affect, depressed mood, impaired recent recall, anxious mood,

10  and other abnormal mental status findings.  (AR 241, 474, 498, 574-77.)   The Commissioner

11  again provides no substantive response to plaintiff's arguments, and plaintiff does not assign

12  error to the other reasons cited by the ALJ regarding inconsistencies in the objective medical

13  evidence.  (AR 18.)   The Court agrees with plaintiff that the two reasons challenged by

14  plaintiff are not supported by substantial evidence.

15  D.      Conservative Treatment

16         The ALJ cited the "limited and conservative treatment" for plaintiff's back problems as

17  contradictory of her allegations of significantly limiting pain, correctly noting that conservative

18  treatment is one indicator of a lack of credibility of allegedly disabling impairment.  *See Parra*

19  *v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative

20  treatment' is sufficient to discount a claimant's testimony regarding severity of an

21  impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting

22  subjective pain complaints where petitioner's "claim that she experienced pain approaching the

01  highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she

02  received").  Plaintiff does not dispute the concept, but argues it has been misapplied in her

03  case.  She notes that her back condition has not been limited to "conservative" treatment, such

04  as over-the-counter medications, but has included both narcotic and non-narcotic prescribed

05  pain medication and prescription anti-inflammatories, steroid injections, and a referral for

06  neurosurgical evaluation and a pain management clinic.  She notes that the ALJ fails to

07  mention the assessments and treatment by Dr. Balkany at the pain management center,

08  conducted as part of a "Pre-Operative History and Physical Examination."  (AR 504-10.)

09       The Commissioner makes no substantive response to this assignment of error.  The

10  Court finds the ALJ's reliance on a lack of conservative treatment to assess plaintiff's

11  credibility to lack substantial evidence.

12  E.       Credibility Issues Relating to Personality Disorder

13       The ALJ cites plaintiff's "poor work record" and "minimal work history" as evidence of

14  a lack of commitment and an indication plaintiff "is acclimated to living at a low income level"

15  and lacks motivation.  (AR 18, 22.)  Plaintiff agrees her work history is fairly spotty, but

16  argues this is consistent with the impact of her personality disorder on her ability to keep a job.

17  Again, the Commissioner fails to provide a substantive response.  (Dkt. 18 at 18.)

18       The Commissioner further makes no response to plaintiff's argument that the ALJ's

19  reliance on an alleged inconsistency between plaintiff's subjective symptoms and her activities

20  of daily living lacks substantial evidence.   In particular, plaintiff reasonably argues it was

21  more likely she told her treatment provider that she could lift "4-5" pounds, rather than "45"

22  pounds.  (AR 21 (citing AR 558).)

01      The Court agrees a reassessment of plaintiff's personality disorder at step two may

02  impact the nature of the ALJ's consideration of plaintiff's low earnings history and frequent job

03  changes (including her last employment in May 2009), as well as her activities of daily living.

04  Accordingly, on remand, the ALJ should reconsider this basis for evaluating plaintiff's

05  credibility.

06                          Reliance on Medical-Vocational Guidelines

07      The Medical-Vocational Guidelines or "grids" present a short-hand method for

08  determining the availability and numbers of suitable jobs for claimants, addressing factors

09  relevant to a claimant's ability to work, such as age, education, and work experience.   *See* 20

10  C.F.R. Pt. 404, Subpt. P, App 2.   Their purpose is to streamline the administrative process and

11  encourage uniform treatment of claims.   *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

12  An ALJ may rely on the grids to meet his burden at step five.   *Burkhart v. Bowen*, 856 F.2d

13  1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids accurately and

14  completely describe the claimant's abilities and limitations.'"   *Id.*   (quoting *Jones v. Heckler*,

15  760 F.2d 993, 998 (9th Cir. 1985)).

16      Here, the ALJ relied on the grids to find plaintiff "not disabled" at step five, finding that

17  her non-exertional limitations do not significantly erode the universe of work available to her.

18  (AR 28-30.)   Because plaintiff's RFC may be impacted by the reconsideration of her

19  personality disorder at step two, as well as the re-evaluation of the credibility of her subjective

20  testimony, the ALJ should reconsider the step-five finding on remand.

21  / / /

22  / / /

01                                CONCLUSION

02          For the reasons set forth above, the Court recommends this matter should be

03 REVERSED and REMANDED for further proceedings.

04          DATED this 27th day of September, 2013.

05

06                                              _____
                                                Mary Alice Theiler
07                                              Chief United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -14